## D. M. GOODRICH v. T. W. WILLIAMSON AND OKLAHOMA NATIONAL BANK.

(Filed Feb. 8, 1901.)

INTERPLEADER—*When Allowed—Defendant Admitting Liability, Judgment may be Adverse and he be Discharged- When.* Upon reconsideration, it is held that the defendant, Williamson, having filed his affidavit in the case, which was in effect an answer and an admission of liability to the extent of the indebtedness then due upon the note sued upon, the way was cleared for the order of the court as against him, which was a judgment against him for the specific amount of money demanded against him by the plaintiff, and that the judgment of the court should be, as to him, affirmed and that he should be discharged from further liability.

(Syllabus by the Court.)

*On Petition for Rehearing.*

*Trimble & Braley, John A. Eaton* and *H. H. Howard,* for plaintiff in error.

*R. G. Hays* and *J. S. Jenkins,* for defendant in error, the Oklahoma National Bank.

*B. F. Burwell,* for defendant in error, T. W. Williamson.

Opinion of the court by

McAtee, J.: A rehearing has been allowed by the court in this cause, upon Rule No. 19, which provides that:

"An application for a rehearing of any cause shall * * * particularly set forth the grounds thereof and showing either that some question decisive of the case and duly submitted by counsel has been overlooked by the court, or that the decision is in conflict with an express statute or controlling decision, to which the attention of the court was not called, either in brief or oral argument, or which has been overlooked by the court, * * *."

Upon this rule the defendant in error proceeds to re-argue the question of the right of a party to intervene under the circumstances of this case, for the purpose of setting up an equitable claim to the matter in litigation. And it is now arfued that there are two lines of decisions one of which is represented by the courts of New York, Missouri and Wisconsin, while the other is upheld by the courts of Indiana, California, Iowa and Kansas. And the defendant proceeds to restate *Summers v. Hutson,* 48 Ind. 288; *Stich v. Goldner,* 38 Cal. 608; *Talor v. Adair,* 22 Iowa, 279, and *Ludes v. Hood et al.,* 29 Kan. 49.

*Ludes v. Hood et al.,* 29 Kan. 49, was cited in the original brief of defendant in error, and expressly treated in the opinion of the court. *Summers v. Hutson,* 48 Ind. 228 was presented in the original brief of the defendant in error, and considered by the court. It was a case in which A placed personal property in the hands of B, as his agent, to sell, and in which B, having sold the property to C, wrongfully took for it a note, not governed by the

law merchant, to himself or to D. The note was assigned by the payee to an innocent assignee for a valuable consideration. The assignee of the note brought suit against the maker. A was permitted in that action to show that he was the legal owner of the note; that the property after it had been given, was his property, and that he had the right to be substituted to the rights and interests claimed by the assignee, and to recover on that note. It was a case in which A was the legal owner of the note.

The cases of *Stich v. Goldner*, 38 Cal. 608, and *Talor v. Adair*, 22 Iowa, 279, are somewhat similar, upon the facts, to *Ludes v. Hood*, in the former of which the intervenor was "the rightful owner of the note," and in the latter of which the intervnor was "the equitable owner" of the promissory note sued upon.

The other citation is not calculated to aid the court here in the correct solution of the question presented to us in the case at bar, since the statutes of intervention of the states of California and Iowa, which regulates the subject of intervention, provide that:

"Any person who has an interest in the matter of litigation, in the success of either of the parties to the action, or against both, may become a party to an action between other persons, either by joining the plaintiff in claiming what is sought by the petition, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after the issue has been joined in the cause, and before the trial commences." (Pomeroy on Remdies and Remedial Rights, paragraph 413.)

It will be seen that the statutes upon which these authorities cited upon the application for rehearing are founded are totally dissimilar to those upon which the solution of the questions proposed here depend.

Upon the ground, however, that the decision heretofore made is in conflict with a "controlling decision, to which the attention of the court was not called" or "which has been overlooked by" it, it is contended that the determination of the supreme court of Kansas in *Gerson v. Hanson*, 34 Kans. 590, is controlling, since it is an interpretation of the statutes of Kansas relating to new parties before the Code of Civil Procedure of Kansas was adopted as the law of this Territory. In this case Wilson had an attachment bond against Lightbody. The attachment undertaking was executed by Wilson, as principal, and Hanson *et al.*, as sureties. The attachment failed. Gerson, the assignee of Lightbody, brought suit on the attachment bond against Hanson and Lehman, omitting to make Wilson a party defendant. Hanson and Lehman applied to the court to have Wilson brought in as a party defendant, and Wilson also filed his application to be made a party defendant, each of these applications setting up that Wilson had obtained a personal judgment in the attachment case against Lightbody, and that the amount of that judgment would be a proper subject of off-set by Wilson against the claim of Gerson. Manifestly Hanson, the assignee of Lightbody, had, on that account, omitted to make Wilson a party defendant in the suit on the attachment undertaking, and he accordingly resisted the application of Wilson and his sureties to have Wilson made a party defendant in that action. Since the action was upon an attachment bond, upon which Wilson was principal, and the controversy was one in which his interest, in so far as it was not only identical with that of Hanson *et al.*, as against the plaintiff, was one in which his liability was prior to theirs, he had, as provided in sec. 36 of the code, "an interest in the contro-

versy adverse to the plaintiff, and was a necessary party to a complete determination or settlement of the question involved therein." And the question was one in which, under sec. 41 of the Code, the determination of the controversy between the parties could be had "without prejudice to the rights of others or by saving their rights." And the court properly permitted them to be brought in.

In the case here considered, Gerson could have sued and ought to have sued Wilson, because he was a party to the attachment undertaking sued upon. It expressly appeared in the case that Lightbody was insolvent. The case came expressly under secs. 36 and 41 of the Code of Civil Procedure, but there is no analogy in the case to the case now being considered.

In addition to the authorities heretofore cited upon the proposition upon the right of intervention, it was said in *Cosgriff v. Savings Inst.*, 52 N. Y. S. p. 189, that:

"The rule is well settled that the plaintiff in an action at law that seeks nothing but a money judgment, cannot be compelled to bring in other parties than those he has chosen to make defendants."

And it was said in *Wescott v. Patton*, 10 Colo. 544, 51 Pac. 1021, that:

"In a suit upon a promissory note by an assignee of the note, a judgment creditor of the payee of the note has no such interest in the matter in litigation as to entitle him to interevene, on the ground that the payee was insolvent and transferred the note to the plaintiff without consideration, and for the purpose of hindering and defrauding his creditors."

And it is said in Pomeroy's Remedies and Remedial Rights, sec. 424, that:

"The occasions on which a third person may intervene in a pending action are very few. The scope of the provi-

sion is exceedingly limited; it has been said that its opera-
tion is confined to those cases in which a bill of inter-
pleader would have been permitted, under the former
practice, to accomplish the same end.   It is certain that
the right to intervene can only be exercised in actions for
the recovery of real or personal property.   It does not
exist, therefore, in an action to recover money."

The proposition that E. W. Dowden and M. I. Dowden
were necessary parties to the action is also averred in
the petition for rehearing to be erroneous upon all the
authorities.

No "express statute or controlling decision to which
the attention of the court was not called, either in brief
or oral argument, or which has been overlooked by the
court" has been cited, nor has the "question, statute, or
decision so overlooked" been distinctly stated in the peti-
tion.   A number of cases have been cited upon the propo-
sition, which were contained in the original brief.

It is said in Pomeroy on Remedies and Remedial Rights,
sec. 347, that:

"In an action by a judgment creditor to reach the equit-
able assets of the debtor in his own hands, or to reach
property which has been transferred to other persons
·or property which is held by other persons under such a
state of facts that the equitable ownership is vested
in the debtor, the judgment debtor is himself an indis-
pensable party defendant and the suit cannot be carried
to final judgment without him."

And it is again said by the same author in sec. 350, that:

"In an action brought by or on behalf of a judgment
creditor, to reach a fund in the hands of an express
trustee for the debtor, such debtor is a necessary defend-
ant, and should be joined with the trustee; he is the per-
son directly interested in the fund, and the one to be di-
rectly affected by the judgment." (Wait on Fraudulent

Conveyances, sec. 129; *Bank v. Laneheimer*, 14 Sou. Rep. 776; *Child v. Brace*, 4 Paige, 309; *Beck v. Burdett*, 1 Paige 305.)

The question now remains touching the extent of the liability of T. W. Williamson; and sec. 4615, Statutes of Oklahoma, 1893, is cited as a statute to which the attention of the court has not hitherto been referred, as sustaining the contention that the extent of Williamson's liability ought to have been determined upon the order of the district court, by which he was, on the 9th day of April, 1897, ordered to pay the amount then due upon the note sued upon by Goodrich, into court. The statute reads as follows:

"When there is no execution outstanding, the clerk of the court in which the judgment was rendered may receive the amount of the judgment and costs, and receipt therefor, with the same effect as if the same had been paid off to the sheriff on an execution; and the clerk shall be liable to be amerced for refusing to pay the same to the party entitled thereto, when requested, and shall also be liable on his official bond."

The finding of the district court was that Williamson was indebted upon the note in the sum of five thousand dollars, principal, and six hundred and fifty dollars, interest accrued prior to the 29th of March, 1897, which was the date of the filing of his affidavit and application, which was in effect an answer admitting his liability to that extent, and asking permission to be permitted to pay that amount into court and be discharged from further liability. And the judgment of the court thereupon was that he should pay in the sums of principal and interest and costs which had accrued up to that time, and he should be thereafter discharged and relieved from all

other and further liability to either Goodrich or the Oklahoma National bank. The action thus taken by Williamson by his "affidavit," which was in effect an answer and an admission of liability to the extent of the indebtedness due upon the note sued upon, cleared the way for the order of the court as against him, which was in effect a final judgment as to him: He was the defendant in the cause. The action was brought against him, and but for the intervention of the Oklahoma National bank, it was such an admission as would have finally determined the case. There is no evidence of any collusion betwen Williamson and the Oklahoma National bank, by reason of which the bank became an intervenor in the action.

It is true that it was not a full determination of all the issues which have been brought into the case, but it was a determination of the issues which were involved in the case as against him, and the further procrastination of the cause, by which Goodrich has been delayed in obtaining possession of his money, has resulted from the delays caused by the intervention of the Oklahoma National bank. It is the opinion of the court that Williamson's liability should be finally determined by the order of discharge made in the district court, by which he was "discharged and relieved from all other and further liability to either of said parties."

Burwell, J., who was of counsel, not sitting; all of the other Justices concurring.